## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael David Graves, Jr., | ) | C/A No.: 1:24-03233-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND |
| Cathy White, Medical Supervisor; | ) | RECOMMENDATION |
| Shanna Peeler, Nurse Practitioner; | ) | AND ORDER |
| Officer Adams, Kitchen | ) | |
| Supervisor; and Major Leso, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Michael David Graves, Jr. ("Plaintiff"), proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated while a pretrial detainee when on March 27, 2024, he bit into a boneless chicken breast that had a bone in it, resulting in damage to his teeth. Plaintiff alleges he was not provided appropriate or timely dental services after the incident. Cathy White ("White"), Shana Peeler ("Peeler"),[1] Officer Adams ("Adams"), and Major Leso ("Leso") (collectively "Defendants") seek dismissal of Plaintiff's claims.

This matter comes before the court on Defendants' motion for summary judgment. [ECF No. 41]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the applicable procedures and the

---

[1] Defendants correct Peeler's first name as "Shana" [ECF No. 41-1 at 2 n.2], and the court directs the clerk to amend the caption accordingly.

possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 42]. The motion having been fully briefed [ECF No. 44], it is ripe for disposition. Also pending before the court is Plaintiff's third motion to appoint counsel and motion to amend/correct the complaint. [ECF Nos. 45, 46].

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. For the following reasons, the undersigned denies Plaintiff's motion to appoint counsel, grants his motion to amend, and recommends the district judge deny Defendants' motion in part.

I.     Factual and Procedural Background

Plaintiff was booked into the South Carolina Department of Corrections ("SCDC") on August 6, 2023. [ECF No. 41-2 at 24]. Plaintiff has had ongoing dental issues while in SCDC custody. His initial booking screening notes "cavities" and provides from Dr. Rob McDonald, the prior SCDC medical director, concerning "abscessed tooth" and "toothache," the following "pertinent object/subjective findings":

> Abscessed Tooth . . . .
> • complaints of pain (If toothache only refer to toothache guidelines)
> • redness, swelling near decayed tooth
> • halitosis
> • vomiting
> • temperature > 101

• drainage . . . .

Toothache . . . .
• Redness near the decayed tooth
• If significant swelling around decayed tooth refer to abscessed tooth guideline
• Halitosis
• Vomiting
• Temperature > 101

[ECF No. 41-2 at 16–23, ECF No. 40 at 1–6, *see also* ECF No. 41-2 ¶ 5].[2]

Defendants have submitted the relevant SCDC policy:

Barring a medical emergency requiring immediate attention, it is the practice of the SCDC to attempt to treat a toothache with pain medication for a period of five days. If the care provider suspects the inmate has an abscessed tooth, then it is the SCDC's practice to treat the inmate with an antibiotic and pain medication. If the issue isn't resolved after three rounds of antibiotics, then the Inmate will be placed on the dental list, which means he would be transported to a dentist for further evaluation and treatment.

[ECF No. 41-2 ¶ 6].

---

[2] Plaintiff was informed when he previously submitted evidence to the court that "the relevant portions of discovery should not be filed with the court until the outset of the trial or with the filing of a motion or response to a motion." [ECF No. 34]. Notwithstanding, Plaintiff has failed to file evidence with his opposition to Defendants' pending motion for summary judgment, stating he was unable because he could not afford to have copies of evidence made. [ECF No. 44-2 at 13]. In an abundance of caution, and considering Plaintiff's pro se status, the court reviews the evidence Plaintiff previously submitted in conjunction with his briefing in opposition to Defendants' pending motion for summary judgment. [*See* ECF Nos. 31, 36, 40]. Most, but not all, of the evidence Plaintiff submitted was also submitted by Defendants. [*See, e.g.,* ECF No. 31-1 at 13].

After booking, Plaintiff was first seen in medical on August 12, 2023, due to tooth pain. [ECF No. 41-2 at 9]. He was treated by Kerishia Williams, who noted a decayed tooth at the right upper rear of Plaintiff's mouth. *Id.* She started him on ibuprofen and Amoxicillin for ten days. *Id.*

The next day, Plaintiff submitted a request to see a dentist to have "tooth pulled." *Id.* at 50.[3] Plaintiff submitted another request on August 16, 2023. *Id.* at 51. He was informed the facility had no dentist. *Id.* Plaintiff submitted another request on August 29, 2023, as follows: "I have a severe infection that has come back in my gums and teeth" and "[m]y teeth are loose and bleeding when I eat and I taste infection in my saliva as well." *Id.* at 9, 52.

TaMichael Mallisham saw him that day and noted his front bottom teeth were loose and decayed, that "abscess is still present with drainage when pressed," and that "[f]oul odor noted from mouth." *Id.* at 9. He was seen later that same day by Nurse Allane Roach, who prescribed him Clindamycin for ten days. *Id.*

On October 27 and 28, 2023, Plaintiff continued to complain of tooth pain. *Id.* 9, 53–54. Peeler saw Plaintiff and started him on Keflex for seven days, noting "[t]his will be his 3rd round of antibiotics," further noting that

---

[3] Plaintiff was provided the following response from Officer S. Paz: "You can have that done when you are released." [ECF No. 41-2 at 50].

"[i]f no improvement will have Melanie schedule appointment with dental."
*Id.* at 9.

Plaintiff continued to complain. *See id.* at 9, 55 ("I need to see a dentist so that my mouth doesn't become a health issue and can I please get some ibuprofen for the pain with my loose teeth."). On November 9, 2023, Plaintiff was seen by Jereme Randall ("Randall"), teeth issues were noted, Plaintiff was "[a]dvised . . . we had no dentist for him to see," ibuprofen was provided for pain, and it was also noted "[n]o apparent abscess at this time." *Id.* at 9.

The next day, Plaintiff submitted the following complaint:

> I was told by the nurse practitioner that I would be able to see the dentist only if I have been on antibiotics 3 times and the problem still persists. I have been on them 3 times now and I'd like to see the dentist before it comes back again. Please it is very painful and it needs to be dealt with before it get any worse. Thank you for your time and please help me with this.

*Id.* at 56, *see also id.* at 57 (November 12, 2023 complaint), 58 (November 16, 2023 complaint), 59 (November 19, 2023 complaint), 60 (November 25, 2023 complaint), 61 (November 26, 2023 complaint).[4]

---

[4] Plaintiff has submitted a November 21, 2023 complaint in which he complains about having to pay for medication and not being able to see a dentist, among other complaints. [ECF No. 31-1 at 13]. In response, Jennifer Neely states as follows: "There is an outstanding waiting list as you are not the only inmate that needs to see a dentist. While it is our responsibility to care for you while you are in jail, you have failed to care for these issues while you are out of jail which is your responsibility." *Id.*

On November 27, 2023, Randall saw Plaintiff again and provided the following medical note: "Puss abscess noted in tooth. Referred to NP for possible dental appointment. Ibuprofen started again for pain." *Id.* at 9.

Plaintiff repeatedly complained about the teeth-related pain he was experiencing, submitting complaints on December 2, 2023, December 12, 2023, December 14, 2023 (twice), December 29, 2023, January 4, 2024, January 10, 2024, January 15, 2024, January 17, 2024, and January 20, 2024. *See id.* at 8, 62–71. Plaintiff was provided pain medication until his dental appointment occurred on January 23, 2024, where he had five teeth extracted by Joseph K. Lever ("Lever"), D.M.D., at Roebuck Family Dentistry. [ECF No. 41-2 at 8, 13; ECF No. 41-1 ¶ 9].

On January 30, 2024, Plaintiff saw medical after complaining almost daily since the procedure that he still had a painful piece of tooth in his gum:

> Inmate was seen due to c/o a piece of tooth that is still needed to be removed. Inmate verbalized that it has been painful. Inmate wants to be sent back to dentist to have it removed. Inmate was told that NP will be updated. Inmate will be placed on ibuprofen 800mg po BID x 5 days for discomfort.

[ECF No. 41-2 at 8, *see also id.* at 72–77]. Plaintiff was seen again on February 6, 2024, for "tooth pain protocol," *id.* at 8, and on February 12, 2024, Melanie Hunt contacted Lever who responded two days later, informing her

6

"that it will work itself out and that it is normal." *Id.* at 7, 12. Plaintiff was informed of Lever's response on February 21, 2024. *Id.* at 7, *but see id.* at 81.[5]

On March 16, 2024, March 29, 2024, April 11, 2024, Plaintiff's medical records state as follows, in reverse order:

Date: 04/11/2024 1459    Author: White, Katherine
Mr. Graves continues to request to see the dentist, but now states its because he bit into a bone while eating chicken and referenced report and photo in Spillman. Both were reviewed and it was determined that this is not a picture of the boneless chicken breasts served in this facility. This type of bone isn't present in a chicken breast. Mr. Graves's request to return to the dentist has been denied and should no longer be entertained. A message via the kiosk has been sent to Mr. Graves with this information.

Date: 03/29/2024 2301    Author: Neely, Jennifer
I HAVE THE BONE STILL TH BROKE MY TOOTH I HALF THIS IS A DENTAL PROBLEM TH IS THE COUNTIES FAULT FROM THE KITCHEN FOOD S ERVICE CAN I OLEASE G THITAKEN CARE OF IT WAS YESTERD AT FEEDING TI E BETWEEN 5 AND 6 A LICTURE AND REPORTWAS FILED FROM OFFICER VAN CLEET

There was no report or record created in Spillman concerning this incident.

Date: 03/16/2024 1559    Author: RN Arthur, Sonya
Inmate is demanding to be taken to the dentist to have a tooth pulled. He has been informed that we will treat him if his tooth has an abscess but we will not take him to the dentist just to have a tooth pulled. Inmate got upset and hung up the phone on me.

[ECF No. 41-2 at 7, *see also id.* at 45–47 (incident report completed by Deputy Van-Vleet ("Van-Vleet") on March 27, 2024, stating Plaintiff informed

---

[5] From his appointment on January 30, 2024 until February 21, 2024, when he was informed of Lever's response, Plaintiff filed four additional complaints concerning the teeth pain he was experience. [ECF No. 41-2 at 78–81]. Plaintiff filed additional complaint on February 22, 2024, February 24, 2024, March 7, 2024, and March 13, 2024. *Id.* at 82–85.

him "about a bone that he found in his chicken dinner that he claimed hurt his tooth," and including in the report a picture of said bone)].

As indicated above, Plaintiff repeatedly informed medical, beginning the date of the alleged incident, March 27, 2024, that he bit into a chicken bone that broke his tooth and that Van-Vleet documented the incident, including with photographic evidence. *Id.* at 87–94. In response, medical informed Plaintiff that (1) no report existed, (2) chicken is not served with bones, and (3) once the report was reviewed, that "[t]he chicken in the photo is not the boneless chicken breasts provided by this facility" and "you will not be added back to the dental list." *See id.*

It appears Plaintiff was seen by medical again on April 15, 2024, as follows:

> Inmate Graves, Michael (Pod 3, cell 5, bed 2) told me that "Medical told" him to "pull the tooth". Mr. Graves stated that his tooth got broken on a chicken bone. Mr. Graves stated that he still has the chicken bone. Mr. Graves stated that he has written medical 68 times. Mr. Graves stated that medical told him to pull his own tooth. I asked Mr. Graves if medical told him to tie something around his tooth and he responded "Well they told me to pull it, but they didn't specify how to pull it." Mr. Graves asked me the incident number to this report. I did not afford it to him. Mr. Graves stated also stated that he would like to speak with a supervisor about the situation. I did not call one for him as non emergent medical issues are addressed by the medical department. End of report. This ends my involvement with this incident. End of report.

*Id.* at 48.

8

Plaintiff was seen by medical after further complaints on April 25, 2024, although the notes states only that "Inmate seen in POD will treat per protocol." *Id.* at 7. Plaintiff was seen again on May 2, 2024, with a string tied around one of his bottom front teeth, after unsuccessfully trying to pull the tooth himself. *Id.* Plaintiff's medical record on this date notes Plaintiff was informed he would have to remove the string himself and that "[a]ll teeth are very decayed and loose." *Id.* The note further states "Inmate is currently requesting all medical staff employee ID numbers so he can provide them to his lawyer" and "Per Kathy and NP medical is not to touch inmates teeth." *Id.*

Plaintiff continued to complain about pain in his teeth and was provided ibuprofen and Keflex on May 14, 2024, ibuprofen and abscessed tooth protocol on July 7, 2024, and ibuprofen and Augmentin on September 22, 2024. *Id.*

During this time, Plaintiff filed a considerable number of complaints. For example, on May 7, 2024, Plaintiff filed a complaint as follows, also receiving the following response:

> I would like to see a physician or a doctor my mouth is infected in several spots where medical here refuses to acknowledge my dental situation. Also can I please have some orajel and have my account charged and some ibuprofen or tylonel until my canteen comes. Thank you for your time . . . .
>
> Mr. Graves, we have done everything to facilitate your stay here. You have already been to the dentist since being here. I suggest

9

> you plan a little better if you know your going to be out of a specific medication (ie. Ibuprofen, orajel) for pain. J Randall.

*Id.* at 99 (errors in original).

On May 20, 2024, Plaintiff revisited the chicken bone issue with the following response:

> Ms. Peeler seeing how you asked Officer Van Fleet about finding the chicken bone on my plate after I bit it and broke my tooth and he verified I was being truthful can I please be seen by the dentist seeing that it was not my fault and it was on the facilities behalf please . . . .
>
> Your request to return to the dentist has been denied. J Neely.

*Id.* at 104 (errors in original).

After filing a considerable number of complaints and being told he would not be able to see a dentist again, Plaintiff was informed on June 10, 2024, that he was on the waiting list to see the dentist, although Plaintiff was informed on June 21, 2024 as follows: "At this time, there is no appointment scheduled with the dentist. We have over 900 people here and only 1 dentist. It takes awhile to get an appointment." *Id.* at 106, 111.[6]

White has submitted affidavit evidence as follows:

> The Chart Notes reflect that each time the Plaintiff complained of tooth pain his complaints were appropriately considered and treated. What is clear from the Chart Notes and their repeated

---

[6] Plaintiff's last complaint concerning his teeth in record is dated September 29, 2024, and based on a review of the evidence and the parties' filings in the instant case, there is no indication he has been scheduled to see a dentist. [ECF No. 31-1 at 81].

references to the decayed condition of all of the Plaintiff's teeth, is that he fails to care for his dental hygiene when he is not incarcerated.

[ECF No. 41-2 ¶ 15].

II.    Discussion

A.    Standard on Motion for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. S*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be

drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 387 (4th Cir. 1990).

B.     Analysis

1.     Plaintiff's Motion to Amend

As a preliminary matter, the court grants Plaintiff's unopposed motion to correct/amend his complaint. [ECF No. 46]. In his motion and proposed amended complaint, Plaintiff makes similar allegations as in his previous complaint, but clarifies that he is now asserting claims solely against White and Peeler only for violations of this Eighth and Fourteenth Amendment rights. *See id.*

Fed. R. Civ. P. 15(a)(2) allows a party to amend a pleading with leave of court and further states "[t]he court should freely give leave when justice so requires." "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (citations and emphasis omitted).

The court finds no prejudice, bad faith, or futility, and therefore grants Plaintiff's motion.[7]

### 2.    Plaintiff's Deliberate Indifference Claim

Because Plaintiff was only a detainee when the alleged incident occurred, the Fourteenth Amendment Substantive Due Process Clause applies. *See Michelson v. Coon*, No. 20-6480, 2021 WL 2981501, at *2 (4th Cir. July 15, 2021). As explained by the Fourth Circuit:

> To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

---

[7] Because the court has granted Plaintiff's motion to amend, the court need not address Defendants' arguments concerning now-dismissed defendants. [*See* ECF No. 41-1 at 11].

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citations omitted). In other words, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

Defendants also assert a qualified immunity defense. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2)

determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

Relevant to Plaintiff's deliberate indifference claim and Defendants' qualified immunity defense, Defendants argue that "Plaintiff's records clearly show that his health complaints were regularly assessed and treated by SCDC medical staff." [ECF No. 41-1 at 5–6, *see also id.* at 8–9]. However, Defendants' citations to the record solely concern treatment Plaintiff received prior to the date in question, March 27, 2024. *See id.*

Instead, the parties have provided two starkly different versions of the relevant events, precluding grant of summary judgment, with Plaintiff stating he broke his tooth on a chicken bone and was never seen by a dentist and Defendants stating that he did not.

As Plaintiff stated in his sworn affidavit in response to Defendants' motion for summary judgment:

> The Plaintiff's declaration in response to the Defendants motion states on March 27, 2024, he sustained injuries due to biting a bone in his food, breaking his front tooth, and loosening another. Although he has exhausted his grievance remedies, the Defendants have still acted in color of law, continuing to deny medical access without excessive delay to an outside specialist, proper medical treatment, and denial of due process by reckless

15

disregard to the published policy with prejudice and deliberate indifference.

The Defendant's affidavit tells a different story. They claim they have acted in good faith and administered proper medical care to the best of their abilities . . . .

The declaration of the Plaintiff and the defendants are squarely contradictory as to the chain of events and the actions that were taken to remedy them . . . .

[ECF No. 44-1 at 3–4, *see also id.* at 5 (declaring under penalty of perjury that the foregoing is true and correct)].[8]

Likewise, at this time, grant of qualified immunity is inappropriate where it has been clearly established that the Constitution requires prisoners to receive medical care necessary to address their serious medical needs, *see Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976), including dental care. At the time of the alleged conduct, the law on deliberate indifference to dental needs was clearly established, and it would be clear to a reasonable prison medical administrator and nurse practitioner that denying and delaying dental

---

[8] Defendants also indicate that this dispute does not rise to the level of a constitutional violation in that "neither a misdiagnosis alone nor a disagreement with a doctor's chosen course of medical treatment makes out a claim of deliberate indifference." [ECF No. 41-1 at 9 (citing *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) (holding incorrect diagnosis does not constitute deliberate indifference); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding disagreement over treatment plan does not constitute deliberate indifference))]. However, and as indicated above, a review of the record does not indicate this is an issue of misdiagnosis or disagreement with a doctor's course of treatment, but instead an issue of starkly different versions of what occurred, with both sides agreeing that Plaintiff was not seen by a dentist after the alleged incident.

treatment since March 27, 2024, in the face of an inmate's untreated pain was deliberately indifferent.

Defendants disagree, arguing that because Plaintiff has repeatedly complained of the same problem, he is unable to show an affirmative link between the specific injury and the specific conduct of a defendant. [*See* ECF No. 41-1 at 9, *see also* ECF No. 41-2 at 63 (December 12, 2023 complaint stating in part "another tooth has become loose and another one has broken off in my gum"), *id.* at 80 (February 9, 2024 complaint stating in part "I went to have teeth pulled 3 weeks ago a large piece of tooth is still in my gums stopping it from healing correctly and has also caused another tooth to become very loose and another one broke off"); *id.* at 92 (April 1, 2024 complaint stating in part that because of the chicken bone incident "this broke my front tooth and caused another to become loose.")].

Given the evidence of the extensive decay of his teeth and taking this evidence in light most favorable to him, the court cannot hold as a matter of law that the different times Plaintiff has complained about a broken tooth were all referring to the same tooth. Again, taking evidence in light most favorable to Plaintiff, the record indicates that the chicken bone incident occurred, Plaintiff's teeth were harmed, and Plaintiff did not receive adequate dental care thereafter. Although Defendants imply that the chicken bone incident did not occur, they have also submitted Van-Vleet's report,

including a picture, that the incident did occur. Additionally, neither party has submitted Plaintiff's dental records, with the record before the court only establishing through one of Plaintiff's complaints, on April 1, 2024, his belief that "dental [x-ray] will verify that my tooth was [intact]" before the incident in question. [ECF No. 41-2 at 92].[9]

Defendants also note that Plaintiff "has not established through expert testimony that he was suffering from a serious medical condition or that Defendants' response to any of his complaints did not comply with the applicable standard of care, or constituted a conscious indifference to his medical condition." [ECF No. 41-1 at 10]. However, Plaintiff has not brought a claim for medical malpractice or negligence, and the court is not aware of any requirement that Plaintiff must submit expert witness evidence to support his constitutional claim. *See, e.g., Scinto v. Stansberry*, 841 F.3d 219, 229–30 (4th Cir. 2016) ("Regarding the absence of expert medical testimony,

---

[9] Additionally, it is unclear that even if the incident did not occur as offered by Plaintiff, that Defendants had no duty to provide Plaintiff adequate dental care. SCDC employees make much of the fact that Plaintiff's dental concerns were preexisting, and that Plaintiff failed to seek treatment when not incarcerated. However, the court is not aware of any case law holding detention personnel exempt from providing care because a serious medical need was preexisting and because the incarcerated person could have sought care while not incarcerated. *See, e.g., Formica v. Aylor*, 739 F. App'x 745, 756–57 (4th Cir. 2018) (holding the prisoner's "Molar's condition, left untreated, posed an excessive risk of further significant injury and unnecessary and wanton infliction of pain" and that "when a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action.").

plaintiffs alleging deliberate indifference must, '[a]t a minimum, . . . . specifically describe not only the injury but also its relation to the allegedly unconstitutional condition.' There is no requirement, however, that a plaintiff alleging deliberate indifference present expert testimony . . . .") (citation omitted).[10]

Given the record before the court, the undersigned recommends the district judge deny Defendants' motion for summary judgment in part, allowing Plaintiff's claims for deliberate indifference in violation of his Fourteenth Amendment rights to proceed.

### 3.    Plaintiff's Motion to Appoint Counsel

As the court has informed Plaintiff in denying his previous motions to appoint counsel [*see* ECF Nos. 27, 32], the court must appoint counsel if the plaintiff's claim is nonfrivolous, the case is objectively complex, and the plaintiff lacks the abilities necessary to present it. *Jenkins v. Woodard*, 109 F. 4th 242, 248 (4th Cir. 2024). Plaintiff has not presented evidence to show he lacks the abilities necessary to present his claim, and the evidence before the court continues to suggest the case is not objectively complex. Therefore, because Plaintiff has not met the three criteria necessitating appointment of

---

[10] In Plaintiff's motion to amend and proposed amended complaint, he clarifies that he is suing White and Peeler solely in their individual capacities. [*See* ECF No. 46, ECF No. 46-1]. Accordingly, the court need not address Defendants' arguments premised on claims brought pursuant to their official capacities. [*See* ECF No. 41-1 at 12–13].

counsel, his motion is denied. The district judge may wish to revisit this ruling should the matter proceed to trial.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned denies Plaintiff's motion to appoint counsel at this time[ECF No. 45], grants Plaintiff's motion to amend [ECF No. 46], and recommends the district judge deny Defendants' motion, allowing Plaintiff's claim for deliberate indifference in violation of his Fourteenth Amendment rights to proceed against White and Peeler. [ECF No. 41].

IT IS SO ORDERED AND RECOMMENDED.

January 21, 2025                          Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).